# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# NORTHERN DIVISION

| | |
|---|---|
| **TL CROWTHER, LLC,**<br><br>      **Plaintiff,**<br><br>vs.<br><br>**ROCKY MOUNTAIN PIPELINE SYSTEM LLC; and PRAIRIE PIPELINE CONTRACTORS, INC.,**<br><br>      **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:08CV141DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff TL Crowther LLC's ("Crowther") Motion for Summary Judgment and Defendant Rocky Mountain Pipeline System LLC's ("Rocky Mountain") Motion to Strike. The court held a hearing on these motions on May 6, 2010. At the hearing, Plaintiff was represented by Benson Hathaway and Stephen Geary, Defendant Rocky Mountain was represented by George Hunt, and Defendant Prairie Pipeline Contractors, Inc. ('Prairie") was represented by Chandler Thompson. The court heard argument and took the motions under advisement. After carefully considering the memoranda and other materials submitted by the parties and the facts and law relevant to the motions, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Since approximately 2003, Crowther has owned a 658.67-acre parcel of property in Morgan County, Utah ("the Property"). The Property is traversed by two wagon trails, the first

known as the Tunnel Hollow Trail, which spans across the Property for about one-half mile, and the second known as the Phil Shop Trail, which spans the Property for about one-fourth mile. Other than these trails, the Property is completely undeveloped. Crowther acquired the Property for its unique and pristine condition, which is excellent for hunting, camping, fishing and similar outdoor recreational activities in a wilderness environment.

In March 2006, Rocky Mountain began overseeing the installation of a 16-inch pipeline from Summit County to Salt Lake City. The pipeline ran through Morgan County, Utah, near the Property. Rocky Mountain hired Prairie as its agent to construct the pipeline (the "Project"). The pipeline is owned by Rocky Mountain Pipeline System, LLC, Plains Marketing, L.P., Plains All American Pipeline, L.P., and Plains Pipeline, L.P. (collectively, "Rocky Mountain").

Rocky Mountain, as owner of the pipeline, was responsible for acquiring all necessary rights-of-way and access to the Project. Rocky Mountain asserts that after having difficulty communicating with Crowther to gain access to the Property, an employee talked to neighbors who have prescriptive rights of access on the property.[1] Rocky Mountain claims that those neighbors stated that they could give Crowther access to the roads on the Property. Crowther, however, disputes that the neighbors made such statements. Rocky Mountain now admits that it was legally insufficient to rely on the neighbors' statements.

The parties admit that Crowther never gave Rocky Mountain or Prairie permission to enter the Property. Prairie and Rocky Mountain also both admit that there was a technical trespass onto the Property during the Project. Prairie and Rocky Mountain acknowledge that they

---

[1] The Property is in greenbelt tax status with Morgan County, and Crowther has given a 10-year grazing lease to neighbor Scott Rees for nominal consideration.

went onto the Property and used the Tunnel Hollow trail. Rocky Mountain and Prairie admit that Prairie was instructed to make and made changes to the Tunnel Hollow trail so it could be used to access the right-of-way for the Project. Prairie admits that it cleared the trail with a blade, made changes to the grading of the road, and widened the road by a few feet in certain places.

The parties dispute the extent of the changes that were made and the impact of those changes. Prairie and Rocky Mountain assert that these changes can be viewed as improvements to the Property that had little impact on the wildlife or the value of the land for hunting. Defendants have an expert witness stating that the use of the Crowther Property as a hunting ground and habitat for wildlife has not been appreciably negatively impacted by Defendants' changes to Tunnel Hollow road. In contrast, Crowther considers the changes to be a significant destruction of trees and other vegetation which negatively impacts the amount of wildlife on the land and views from other portions of the Property.

Defendants re-seeded the Property and some natural re-vegetation has also begun on the Property. Rocky Mountain and Prairie agree that they need to remove dead wood along the side of the road and to grade or disburse fill piles. The parties, however, have significantly contrasting views on what steps are necessary to repair the alterations that occurred on the Property. Crowther's two experts also provide divergent cost estimates for remediation. Crowther claims that the estimated costs of restoring the Property to its previous, undisturbed condition is $349,095. Rocky Mountain and Prairie, however, contend that the cost to return the Property to its original condition is $9,450.00.

In addition, Crowther argues that the conservative estimated value of the trees removed or

3

killed by Defendants is $108,000. Prairie asserts that the $108,000 claimed by Crowther includes the most expensive option for replacing the trees, planting full-grown trees rather than seedlings, even though Crowther's own expert indicated that planting full-grown trees is unreasonable.

The parties also dispute the current value of the Property. Crowther states that surrounding property is being marketed at an average price of $1,990 per acre, which, if applied to the Property, would result in a value of approximately $1.3 million. Defendants, however, argue that Crowther has not introduced any admissible evidence as to the value of the Property. Defendant's argue that property values in Utah are established by what someone is willing to pay for the specific parcel of property. Todd and Lance Crowther purchased the Property in 2003 for $55,000. Since then, two parties have offered to buy the property. The first party offered $55,000, and Crowther was unable to remember the amount the second party offered. To further dispute Crowther's claim that the Property's value is $1.3 million, Defendants rely on an appraisal conducted recently by a qualified appraiser that placed the Property's value at the time of the trespass in 2007 at $724,537.00.

## DISCUSSION

Crowther moves for summary judgment on its trespass claim and its claim under Utah Code Section 78B-6-1002. Both defendants admit that there was a technical trespass.[2] The heart

---

[2] Under Utah law, "the essential element of trespass is physical invasion of the land; '[trespass] is a possessory action,' or, in other words, there must be 'an encroachment on the rights of another.'" *Sycamore Family v. Vintage on the River Homeowners Ass'n*, 2006 UT App 372, ¶ 4, 145 P.3d 1177(quoting *Walker Drug Co., Inc. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998)); *see also John Price Assoc. v. Utah State Conf., Bricklayers Locals Nos. 1, 2 & 6*, 615 P.2d 1210, 1214 (Utah 1980) ("The gist of an action of trespass is infringement on the right of possession."). To establish trespass, "'it is necessary only that the actor intentionally be upon any part of the land in question.'" *Gallegos v. Lloyd*, 2008 UT App 40, ¶11, 178 P.3d 922 (quoting Restatement (Second) of Torts § 164 cmt. a (1965)).

of the controversy, therefore, is the appropriate measure of damages for such trespass.

## I. Damages Under Trespass Claim

Crowther argues that the Court should award it restoration damages for the trespass in the amount of $349,095. Crowther asserts that under Utah law, when land has been damaged and there is a reason personal to the owner for restoring the land to its original condition, the proper measure of damages is the cost of restoring the property to its original condition. *United States v. Garfield Cnty.*, 122 F. Supp. 2d 1201, 1259-60 (D. Utah 2000) (citing Restatement (Second) of Torts § 929(1)(a))(awarding costs of restoring property damage by defendants because land was unique and plaintiff wanted it repaired). In contrast, Defendants argue that Utah law provides that the proper measure of damages for a permanent or indefinite injury to land, like that alleged by Crowther, is the diminution in market value. And, furthermore, Defendants assert that even if Crowther were able to establish a right to restoration costs, Utah law does not permit recovery of restoration costs exceeding diminution in market value.

Utah law governs the substantive questions of this case because this action is before the Court under its diversity jurisdiction. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005). Utah law has long recognized that "[w]hen property has been damages or destroyed by a wrongful act, the desired objective is to ascertain as accurately as possible the amount of money that will fairly and adequately compensate the owner for his loss." *Brereton v. Dixon*, 20 Utah 2d 64, 66, 433 P.2d 3, 5 (1967). The Utah Supreme Court later referred to *Brereton* as recognizing "that there is no inflexible rule as to the appropriate measure of damages for the destruction of or injury to trees attached to realty." *Pehrson v. Saderup*, 28 Utah 2d 77, 79, 498 P.2d 648, 650 (1972). The proper measure of damages to employ "is the one which will

5

give the injured party reasonable and adequate compensation for his actual loss as related to his use of the property." *Id.*

The *Pehrson* court recognized that "[g]enerally, the courts have held that the measure of damages for the destruction of or injury to ornamental or shade trees or shrubbery is the difference in the value of the land just before and just after the destruction or injury." *Id.* The *Pehrson* court, however, also cited to an Ohio case which stated that "[w]here the presence of trees is essential to the planned use of property for a homesite in accordance with the taste and wishes of its owner, where not unreasonable, and where such trees are destroyed by trespassers, the owner may be awarded as damages the fair costs of restoring his land to a reasonable approximation of its former condition, if such restoration be practical, without necessary limitation to diminution in market value of such land." *Id.* (citation omitted).

Finally, with respect to the proper measure of damages, the *Pehrson* court stated that "[i]n a determination of the appropriate measure of damages in this area, the cardinal principles are flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness." *Id.*

In a later case, *Ault v. Dubois*, 739 P.2d 1117 (Utah 1987), the Utah Supreme Court again recognized that the measure of damages for a "permanent injury to land is the difference in the market value of the land immediately before and immediately after the injury, but if the land may be restored to its original condition, the cost of restoration may be used as the measure of damages if it does not exceed the diminution in the market value of the land." *Id.* at 1120. While the court appeared to be applying a ceiling to restoration costs, the court also noted that the "diminution in value should probably not be viewed as an inflexible ceiling on recoverable

6

damages." *Id.* at 1120 n.3 (citing *Advanced, Inc. v. Wilks*, 711 P.2d 524, 527 (Alaska 1985) (Where property has special significance to the owner and repair seems likely, the cost of repair may be appropriate even if it exceeds diminution in value)).

The court specifically addressed damage to trees and again reiterated that the standard under *Pehrson* is "that there is no inflexible rule as to the appropriate measure of damages to trees." *Id.* at 1121. The court stated that as a general rule diminution-in-value damages are awarded for ornamental trees or shrubs and reasonable restoration damages are awarded for essential trees. *Id.* But the court noted that in *Pehrson* the court awarded diminution-in-value damages "not simply because lilacs are ornamental," but because the damage was the result of a boundary mistake and "the owner's proposals for restoration were unreasonable." *Id.*

While the several trespass cases under Utah law may restate the appropriate measure of damages in slightly differing ways, all of the cases recognize that the measure of damages for injury to trees is a flexible one, bounded by reasonableness. Depending on the factual circumstances of the given case, the damages can be based on a diminution in value or can include reasonable restoration costs. The court finds nothing in Utah case law that would require, as a matter of law, the court to award either diminution-in-value damages or restoration damages in this case. Because Utah law repeatedly states that the law in this area is flexible and bounded by reasonableness, the court concludes that whether the damages Crowther seeks are reasonable is a fact intensive question that would be inappropriate for the court to determine at the summary judgment stage.

The parties dispute the applicability of the main case relied upon by Crowther, *United States v. Garfield County*, 122 F. Supp.2d 1201 (D. Utah 2000). The case was decided by the

federal district court and involved a disputed right-of-way in a national park. *See id*. at 1259 n.103. While the *Garfield* case appears to rely more heavily on the measure of damages provided for in the Restatement (Second) of Torts, nothing in the *Garfield* case attempts to restate Utah law. Moreover, nothing in the *Garfield* case erases the "reasonableness" standard for damages under Utah law. *See id.* at 1259-60 (noting that the "general rule is not an absolute rule" and recognizing that damages may include compensation for the cost of restoration that has been reasonably incurred). Regardless of the *Garfield* court's discussion of available damages, for purposes of this motion, the court concludes that the most significant distinction between *Garfield* and the present case is that the *Garfield* opinion was issued after a full bench trial when the court was able to make findings of fact. At the summary judgment stage, in the present case, this court is not able to make factual assessments and must view the evidence in the light most favorably to the nonmoving parties.

While the undisputed evidence shows that the primary reason Crowther purchased the Property was to enjoy the beautiful, pristine property and the unique recreational characteristics it had to offer, there are several disputed facts regarding the impact of Defendants' trespass on the Crowthers' ability to use and enjoy the unique characteristics of the Property. There is a dispute whether the roads in question have affected the devoted use of the property or altered the property's character. Defendants claims that Crowther's uses for the Property are actually enhanced, at least nominally, by the improved road.

In addition, there are significant disputes regarding the reasonableness of the parties' plans for restoration of the property. The expert testimony varies substantially on this point. Crowther seeks $349,095.00 to restore the Property to "its previous, undisturbed condition," as

8

well as $108,000.00 to replace trees (trebled to $324,000.00). Defendants dispute that the damages calculations are based on necessary, reasonable, and accurate estimates of the cost of restoration. Defendants point out that the demand of $673,095.00 is more than twelve times the amount Crowther paid in 2003 for the 660-acre tract. The parties dispute the valuation of the Property, which is clearly a material issue of fact in determining the reasonableness of the trespass damages. Crowther claims that the Property is now worth $1.3 million, whereas Defendants claim that the highest appraisal of the Property is $724,537.00, and nobody has ever offered to pay more than the $55,000 Crowther paid for the Property in 2003. Defendants also claim that the changes to Tunnel Hollow road affect only 4.5 acres, or less than 1% of the entire tract. Crowther, however, contends that the changes to Tunnel Hollow road can be seen from other points on the Property and, thus, affect more than the actual acreage that was altered. These disputes must be weighed and resolved by the finder of fact in its determination of reasonableness.

The parties also dispute the nature of the damage done to the Property. Changes to land itself are sometimes classified as "permanent" or "indefinite" injuries. In *Walker Drug Co., Inc. v. La Sal Oil Co.*, 972 P.2d 1238, 1241 (Utah 1998), for example, the court held that saturation of soil and groundwater with gasoline constituted a "permanent injury." By contrast, injuries to "things" on land, such as a damaged fireplace, broken doors and locks, broken windows, uprooted ornamental lilac bushes, and holes in walls, have been generally classified as "temporary" injuries under Utah case law. *See Pehrson v. Saderup*, 498 P.2d 648 (Utah 1972); *Ault v. Dubois*, 739 P.2d 1117, 1119-21 (Utah Ct. App. 1987).

The Utah Supreme Court states that "[t]ypically, the measure of damages in trespass and

9

nuisance cases involving permanent or indefinite injury has been the diminished market value of the property, plus consequential losses to the use of the land or from discomfort or annoyance to the possessor." *Walker Drug*, 972 P.2d at 1246 (internal citations and quotations omitted). In contrast to damages from permanent injuries, "damages from temporary injury, i.e., injury that is remediable, typically include compensation for the cost of remediation or repair to the property or the property's diminished rental or use value during the period in which the injury persists, plus consequential damages." *Walker Drug*, 972 P.2d at 1246.

Defendants state that the court in *Thorsen v. Johnson*, 745 P.2d 1243 (Utah 1987), found that the dredging of an irrigation ditch, including the uprooting of a number of trees, constituted a "permanent injury." But the court did not specifically make a distinction between permanent and temporary injury. The *Thorsen* court merely found that applying the diminution of value test was the reasonable measure of damages in that case. The court noted that although the dissent recognized that another measure of damages was restoration costs, the "costs of restoration would be unreasonable since the value of an acre of similar land would be $1,250 and restoration costs would exceed $100,000 on the 1.08 acres which Thorsen damaged." *Id.* at 1244 n.1. *Thorsen*, therefore, does not stand for the proposition that the loss of trees accompanying damage to the land itself is always considered a permanent injury. Utah cases involving the loss of trees do not foreclose restoration damages, they merely provide that such damages must be reasonable in relation to other relevant factors, such as the value of the property, the use of the property, etc.

There is also a factual dispute as to whether the nature of the alterations to the Property constitute permanent or temporary damages. Defendants' conduct may well have caused both types of damages. Alterations to the road itself may be considered permanent whereas the

removal of trees may be considered temporary. At the summary judgment stage, however, with competing theories by the parties as to the nature of the actual damage and disputes as to whether the alterations can even be considered damaging, the court is not in a position to factually determine the nature of the damages to the Property. These determinations should be made at trial and the appropriate reasonable damages assessed accordingly. Because of the numerous factual disputes in this case, Crowther's motion for summary judgment seeking damages as a matter of law is denied.

## *II. Damages Under Utah Code Annotated Section 78B-6-1002*

Crowther's motion for summary judgment also seeks an award of damages under Utah Code Annotated Section 78B-6-1002. This section provides treble damages for the unlawful removal of, or damage to, trees or bushes:

> Any person who without authority cuts down or carries off any wood or underwood, tree or timber, or girdles or otherwise injures any tree or timber on the land of another person . . . without lawful authority, is liable to the owner of such land . . . for treble the amount of damages which may be assessed in a civil action.

Utah Code Ann. § 78B-6-1002.

Crowther claims that it is entitled to summary judgment because the undisputed evidence establishes that Crowther never gave Rocky Mountain or Prairie permission to remove or damage the trees and bushes on the Property, and Rocky Mountain and its agent Prairie entered upon the Property and cut down or uprooted over 240 trees that were valuable for aesthetic, recreational, and hunting purposes. Crowther asserts that the value of the lost trees amounts to $108,000. Crowther, therefore, seeks treble damages on its Second Claim for Relief under Utah Code Annotated Section 78B-6-1002 in the amount of $324,000.

11

Although Section 78B-6-1002 allows for treble damages in a civil action for unlawful removal of, or damages to, trees and timber, the Utah Supreme Court has held that treble damages may not be assessed against a party whose "trespass was committed through an innocent mistake as to the boundary or location of a tract of land claimed by defendant." *Pehrson*, 498 P.2d at 651. In so holding, the court cited decisions from other states with substantially similar statutes that have interpreted the statutes as requiring that the trespass be willful and intentional. *See, e.g.*, *Caldwell v. Walker*, 211 Cal. App.2d 758 (1963); *Earl v. Fordice*, 374 P.2d 713, 714 (Idaho 1962).

In the present case, Rocky Mountain was responsible for procuring all temporary easements and right-of-way access agreements. Prairie assumed that access agreements and necessary permission had been procured for the Property. Prairie contends that it believed in good faith that it had lawful access to the roads and its mistake was an innocent one. Rocky Mountain contends that one of its employees erroneously relied upon permission from holders of prescriptive easements rather than Crowther. Because the intent of the parties is in dispute, the court concludes that summary judgment as a matter of law is inappropriate. Accordingly, Crowther's motion for summary judgment on the Second Claim for Relief under Utah Code Annotated Section 78B-6-1002 is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff TL Crowther LLC's Motion for Summary Judgment is DENIED. The court, therefore, also concludes that Defendant Rocky Mountain Pipeline System LLC's Motion to Strike is MOOT.

DATED this 20th day of May, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge